**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**TARVIO WALKER**                                                                                              **PLAINTIFF**

v.                                                                                                                      No. 1:06CV58-P-A

**CORINTH MISSISSIPPI**
**POLICE DEPARTMENT, ET AL.**                                                                   **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the motion by the defendants for summary judgment in this *pro se* prisoner case challenging the conditions of the plaintiff's confinement under 42 U.S.C. § 1983. The court extended the deadline for the plaintiff to respond to the motion for summary judgment to March 24, 2008. The plaintiff has not, however, responded to the motion, and the extended deadline has expired. The matter is ripe for resolution. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. For the reasons set forth below, the motion by the defendants for summary judgment shall be granted, and judgment shall be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert.*

*denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**[1]

The plaintiff has a long history of mental illness and has taken various medications for bipolar disorder for years. *See* Pl. Dep. at 20-27, Exhibit "B" to Defendants' Motion for Summary Judgment. On November 3, 2005, the plaintiff had himself committed to the Mississippi State Mental Hospital for bipolar disorder, and he was released on December 8, 2005. *Id.* at 27. The next day, December 9, 2005, the plaintiff was hospitalized for blood clots. *Id.* at 28-29. On December 11 the plaintiff's girlfriend, Vickie Turner, went to the hospital parking lot to retrieve some of the plaintiff's belongings from her car, but it was no longer in the parking lot. *Id.* at 32-34. Someone had removed it from the parking lot and taken it to the home of James Turner, Vickie Turner's estranged husband. *Id.* at 39. The plaintiff never saw his possessions again. On December 13, the plaintiff was released from the hospital. *Id.* at 32. The plaintiff was not supposed to have been released, but he begged his treating doctor to release him from the hospital *Id.* at 45. The plaintiff was unable to take care of himself and required help to walk. *Id.* On December 13, 2005, the plaintiff's aunt rented him and his girlfriend Vickie a hotel room at the Downtown Motel in Corinth so he could recover. *Id.* at 44.

Approximately ten to fifteen minutes after the plaintiff checked into the Downtown Motel, the police knocked on the door. *Id.* at 46. The plaintiff was unable to answer the door, so his girlfriend answered, instead. *Id.* The plaintiff was sitting up in the bed. *Id.* Six officers were present, including the defendant Officer Jerry Mayhall. *Id.* at 46-47. The officers told the

---

[1]For the purposes of this memorandum opinion and final judgment only, the court has construed these facts in the light most favorable to the plaintiff.

plaintiff they had a fugitive warrant for his arrest. *Id.* at 49.[2] The officers asked the plaintiff to get out of the bed; however, he was unable to do so. *Id.* at 47. The officers instead picked the plaintiff up and placed him on his stomach on the floor, where they handcuffed him.[3] *Id.* at 54-55. The officers picked the plaintiff up underneath his arms and, as he could not walk, they carried him out of the hotel room. *Id.* at 55-56. The officers then put the plaintiff in the back of the patrol car and transported him to the Alcorn County Jail. *Id.* at 56.

At the Alcorn County Jail, the officers laid the plaintiff down on a mattress. *Id.* at 57. The plaintiff had not been taking his medication as directed when he got back to his room, which caused a blood clot in his foot to burst. *Id.* at 59. For this reason, he was transported back to the hospital, where he was placed under guard. *Id.*

## Discussion

Section 1983 provides, in pertinent part:

Every person who, under color of any state statute, ordinance, regulation, custom, or usage, . . . subjects or causes to be subjected, any citizen of the United States or

---

[2] There was at the time a 2003 warrant for the plaintiff's arrest out of Alcorn County, Mississippi, for failure to appear at a hearing regarding burglary and larceny of a dwelling; the warrant has "served 12-13-05" handwritten at the bottom of the page. Exhibit "C" of the Defendants' Motion for Summary Judgment.

[3] Although the plaintiff alleged in his unsworn amended complaint that the defendants "kicked [his] body too many times to mention" and that the beating continued for fifteen minutes, his sworn testimony at the *Spears* hearing and at his deposition established that the arresting officers merely took the steps necessary to secure his hands and carry him to the vehicle for transport, as described in this memorandum opinion. As the party opposing summary judgment, the plaintiff may not "rest upon the mere allegations []of the [his] pleading," but must come forward with proof to oppose summary judgment. FED. R. CIV. P. 56(e). In determining undisputed material facts in this case, the court has considered the plaintiff's sworn testimony, not merely his pleadings (which could not be "reduced to admissible evidence in court"). *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to
the party injured in an action at law. . . . .

42 U.S.C. § 1983. Section 1983 provides plaintiffs the right to sue when their rights arising under the United States Constitution have been violated. Thus, a Section 1983 plaintiff must demonstrate he has been deprived of a right secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1909 (1981). In this case, the plaintiff alleges that his constitutional rights were violated when the defendants arrested him on December 13, 2005. Specifically, he alleges that: (1) no valid arrest warrant existed to support his arrest by the Corinth Police Department, (2) the arresting officers used excessive in arresting and transporting him to jail, (3) that the defendants confiscated his belongings, which were stored in the vehicle of James Turner, (4) the arresting officers did not recite the plaintiff's rights under *Miranda* to him. As discussed below, these claims must fail.

### Validity of Arrest Warrant

The Fourth and Fourteenth Amendments guard against arrest without probable cause. *Thomas v. Sams,* 734 F.2d 185 (5th Cir. 1984). The plaintiff argues that his arrest was unconstitutional because the city did not have a fugitive warrant for his arrest. *See* Pl. Dep. at 48. The plaintiff stated that he missed a court date with the county but not with the city. *Id.* at 48-49. Therefore, the plaintiff believes that the city should not have arrested him. *Id.* On November 23, 2005, an Alias Capias warrant had been issued by the Circuit Court of Alcorn County for the plaintiff. *See* November 23, 2005, Warrant, Exhibit "C" to the Defendants' Motion for Summary Judgment. During the December 13, 2005, arrest of the plaintiff the Corinth Officers were acting pursuant to the November 23 warrant. *Id.*

-5-

The Constitution does not guarantee that only the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689 (1979). In *Baker*, the Supreme Court held that the detention of an individual for three (3) days on the basis of a facially valid arrest warrant did not amount to a deprivation of liberty without due process of law – despite the individual's protestations of innocence. *Id.* Citizens are not entitled to an error-free investigation of a claim of innocence and that "the Constitution does not guarantee that only the guilty will be arrested for if it did, Section 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Id.*

An arrest made under authority of a properly issued warrant is, quite simply, valid. *Rodriguez v. Ritchey,* 556 F.2d 1185 (5th Cir. 1977). Furthermore, "[I]f the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and insulates the initiating party." *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir. 1982); *accord Metro Charities, Inc. v. Moore,* 748 F.Supp. 1156, 1165 (S.D. Miss. 1990).

In this case, the plaintiff was arrested pursuant to a valid warrant issued by the Circuit Court of Alcorn County. The plaintiff does not dispute that he failed to appear – the reason for issuance of the warrant. Pl. Dep. at 48. His complaint is that the Corinth Police Officers executed the warrant when his failure to appear occurred "in the county," rather than in the City of Corinth *Id.* at 48.

"Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him *at the time*." *Maryland v. Macon,* 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2783 (1985) (internal quotations and

citations omitted) (emphasis added). Indeed, once probable cause is established, the police have no duty to try and negate it. *Baker,* 443 U.S. 137 at 146. As a valid warrant existed to arrest the plaintiff, there is no constitutional violation. Hence, the plaintiff's false arrest claims fail as a matter of law and shall be dismissed with prejudice.

**Excessive Force**

To state a claim for excessive force under § 1983, a plaintiff must show that he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F. 3d 834, 839 (5th Cir. 1998) (plaintiff stated a claim for excessive force when he was painfully handcuffed for four hours, resulting in permanent injury, where officers refused his requests to loosen the cuffs or to allow him to use the bathroom). The injury need not be substantial; however, a plaintiff must have "suffered at least some injury." *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993).

Merely handcuffing an uncooperative suspect does not constitute excessive force. *U.S. v. Sanders*, 994 F. 2d 200, 207-08 (5th Cir. 1993). The increased potential for violence is a factor in support of handcuffing a suspect. *Id. at 207.* A court must not resort to "unrealistic second-guessing" of officers as to what was necessary to ensure their safety. *Id. at 210.* A plaintiff's assertion of discomfort during a handcuffing procedure will not support an excessive force claim under § 1983. *Brumfield v. Jones*, 849 F.2d 152, 156 (5th Cir. 1988).

In this case the force used by the arresting officers was objectively reasonable. The officers told plaintiff they had a fugitive warrant for his arrest. Pl. Dep. at 49. They told the plaintiff to get out of the bed; however, he was unable to do so. *Id.* at 47. The officers then

lifted the plaintiff and placed him on his stomach on the floor – where they handcuffed him. *Id.* at 54-55. The officers lifted the plaintiff underneath his arms, carried him in that manner out of the hotel room, placed him in the police vehicle, and transported him to the Alcorn County Jail. *Id.* at 55-56. At the Alcorn County Jail, the officers placed the plaintiff on a mattress. *Id.* He did not suffer any injury as a result of the arrest. *Id.* at 59. He was eventually transported back to the hospital by the Alcorn County Jail because a blood clot in his foot burst; however, the plaintiff suffered from the blood clot prior to his arrest, and it burst because he had previously not taken his medication. *Id.* The officers did not use excessive force in handcuffing the plaintiff prior to arresting him, placing him in the patrol car, or driving to the Alcorn County Jail. *Sanders*, 994 F. 2d at 207.

The plaintiff in this case was handcuffed no longer than necessary for his safe transport to the Alcorn County Jail, as opposed to the plaintiff in *Heitschmidt*, who was painfully handcuffed for four hours. Certainly police handcuffs are uncomfortable; however, mere discomfort is insufficient to support an excessive force claim. *Brumfield*, 849 F.2d at 156.

Finally, there can be no award for injury caused by reasonable force. *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996). Hence, even if the officers had injured the plaintiff while handcuffing him,"[t]he aggravation of the old injury [is] not attributable to the excessive component of the force used." *Id.* at 403. "Rather, the aggravation of [th plaintiff's] old [arm] injury was claimed to have been caused by handcuffing his hands behind his back, a routine police procedure." *Id.* For these reasons, the court finds that the force used to arrest, restrain, and move the plaintiff was not excessive, and the defendants are entitled to summary judgment on the claim of excessive force.

### Disappearance of the Plaintiff's Belongings

The plaintiff claims that while he was in the hospital recovering from blood clots, someone removed his girlfriend's vehicle (which contained the plaintiff's belongings) from the parking lot. *Id.* at 32-34. The plaintiff does not know who removed the vehicle from the parking lot, but the vehicle ended up in the possession of James Turner (the estranged husband of the plaintiff's girlfriend, Vickie Turner). *Id.* at 39.

First, the plaintiff's claims against James Turner have been dismissed for failure to effect valid service of process upon him. As such, Turner is no longer a defendant in this case. Second, the plaintiff has adduced no proof to show that any defendant in this case took part in the removal of the vehicle from the hospital parking lot. Finally, James Turner is an individual, not part of state government. Thus, he is not a state actor, and the court has no jurisdiction to hear
§ 1983 claims against him. 42 U.S.C. § 1983. For these reasons, the plaintiff's claims regarding the disappearance of his belongings from his girlfriend's vehicle must be dismissed with prejudice.

### Failure to Read *Miranda* Rights.

Failure to give a *Miranda* warning does not constitute a constitutional violation, *Chavez v. Martinez*, 538 U.S. 760, 772-73, 123 S.Ct. 1994, 2003-04 (2003); as such, the plaintiff has not established a constitutional violation for his claim that the defendants failed to read him his *Miranda* warnings. This claim shall be dismissed.

### No Allegation Supporting Municipal Liability Under 42 U.S.C. § 1983

As discussed above, the plaintiff cannot establish a constitutional violation; thus, there is

no municipal liability. Even if he could establish a constitutional violation, he has not alleged or proved a municipal policy upon which to base § 1983 liability. A municipality cannot be liable under § 1983 unless the alleged constitutional violation proximately resulted from a policy or custom of the municipality. *Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978); *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (*en banc)*, *cert. denied*, 472 U.S. 1016 (1975). A policy for the purposes of § 1983 is:

> 1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; and
>
> 2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *en banc, per curiam, cert. denied*, 472 U.S. 1016 (1985).

The plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d at 767. Further, a municipality may be held liable only for acts for which it is actually responsible. *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998). A municipality cannot be held liable solely because it employs a tortfeasor. *Id.* at 215. In other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id.* A plaintiff must plead "specific facts, not merely conclusory allegations." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

The plaintiff has neither alleged nor proved a municipal policy upon which to base § 1983 liability. As such, any of his claims against the City of Corinth must be dismissed for failure to state a claim upon which relief could be granted.

In sum, the motion by the defendants for summary judgment shall be granted, and judgment shall be entered for the defendants. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 3rd day of April, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE